UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLENE KREISH and
DENNIS KREISH,

Plaintiffs,

Case No. 25-cv-10768
Honorable Linda V. Parker

v.

AMERICAN MULTI-CINEMA, INC.,

Defendant.
_______________________________/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 13)**

On March 19, 2025, Defendant American Multi-Cinema, Inc. ("AMC") removed to federal court the Complaint Plaintiffs Darlene and Dennis Kreish (collectively "Plaintiffs") filed in a Michigan state court. (*See* ECF No. 1.) In their Complaint, Plaintiffs seek to recover for injuries Mrs. Kreish sustained when she fell inside an AMC movie theater due to an allegedly hazardous condition. (*See* ECF No. 1-1.) Mr. Kreish claims loss of consortium. (*See id*.)

The matter is presently before the Court on AMC's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). (ECF No. 13.) The motion is fully briefed. (ECF Nos. 14, 15.) Finding the facts and legal arguments adequately presently in the parties' briefs, the Court is dispensing with oral

argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons below, the Court is granting AMC's motion.

## I. Summary Judgment Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, "[t]he party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (quoting *Liberty Lobby*, 477 U.S. at 248). The non-movant's evidence generally must be accepted as true and "all justifiable inferences" must be drawn in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

## II. Factual Background

On August 5, 2023, Plaintiffs, who are husband and wife, went to see a movie at an AMC theater in Livonia, Michigan. (ECF No. 13-1 at PageID.272-

74.) Plaintiffs had frequently gone to the movies at this theater. (*Id*. at PageID.274.) When Plaintiffs arrived inside the theater auditorium, they found the lighting to be at the level used while a movie is playing rather than at the level used during the pre-film advertising. (*Id*. at PageID.276.) They both remarked, "Oh, my God, how dark it is in here." (*Id.* at PageID.276.)

The auditorium has lighted wall sconces, lighting under the banisters, and lighting on the steps, in addition to overhead lights, all of which are cued based on whether the projector is playing ads, trailers, or the movie. (ECF No. 13-4 at PageID.290; *see also* ECF No. 13-5 at PageID.298.) At all times, however, the banister and stairway lighting remains at the same level, while the overhead and sconce lighting dims once the feature movie begins. (ECF No. 13-4 at PageID.291; ECF No. 13-5 at PageID.298-99.) AMC's theater lighting is fully automated. (ECF No. 13-5 at PageID.294., 296.) It has been for eight to ten years. (*Id*. at PageID.296.)

Plaintiffs walked up the carpeted aisle steps, using the flashlight on Mr. Kreish's mobile phone to illuminate the way, and found seats. (*Id*.) A few minutes later, about five people entered the theater and sat directly behind Plaintiffs. (*Id.* at PageID.277.) Finding them "a little loud," Plaintiffs decided to move to seats about three rows down. (*Id*.) The movie had not yet started. (*Id*. at 279.)

Mr. Kreish went to the aisle Plaintiffs originally traversed to make his way to the new seats. (ECF No. 13-1 at PageID.280-81.) Mrs. Kreish proceeded to the opposite aisle. (*Id.*) Although Plaintiffs each had cellphones, neither used their phone's flashlight when making their way to the new seats. (*Id.* at PageID.277, 279, 281.)

Mrs. Kreish held on to the top of the chairs as she made her way down the steps, and she was looking where she was walking, but not really concentrating on her feet. (*Id.* at PageID.279, 281.) When Mrs. Kreish reached the row where she planned to take a seat, she took a step into the row. (*Id.* at PageiD.281-82.) As she did so, the tip of her shoe got stuck on the carpet tack strip between the carpeted steps and cement floor inside the row, causing her to fall and sustain injuries. (*Id.* at PageID.281-82.) This photo shows the carpeted stairway, cement floor, and carpet tack strips inside the auditorium.



(*See* ECF No. 13-3.)

## III. Applicable Law and Analysis

AMC seeks summary judgment, arguing that Plaintiffs fail to demonstrate a hazardous condition on the premises. Alternatively, AMC contends Mrs. Kreish was more than 50% at fault for the fall and, therefore, is barred from seeking non-economic damages.

### A. An Overview of Michigan's Premises Liability Jurisprudence

Premises liability claims, like all negligence actions, require proof of duty, breach, causation, and damages. *Kandil-Elsayed v. F&E Oil, Inc.*, 1 NW.3d 44, 51 (Mich. 2023); *Lowrey v. LMPS & LMPJ, Inc.*, 890 N.W.2d 344, 348 (Mich. 2016); *see also Lapczynski v. Walmart Stores, Inc.*, 761 F. App'x 530, 534 (6th Cir. 2019). "The first element, duty, is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Kandil-Elsayed*, 1 N.W.3d at 51 (internal quotation marks and citation omitted). "It is well-settled in Michigan that 'the question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides." *Id.* at 52 (quoting *In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*, 740 N.W.2d 206, 210 (Mich. 2007)). In Michigan, land possessor's owe the following duty to invitees: "the 'duty to exercise reasonable care to protect them from an unreasonable risk of harm caused by a dangerous condition on the land.'" *Id.* at 68-69 (quoting *Williams v.*

*Cunningham Drug Stores, Inc.*, 418 N.W.2d 381, 383 (Mich. 1988)) (brackets omitted).

Traditionally, the Michigan Supreme Court considered the "open and obvious" nature of the dangerous condition to assess a landowner's duty. In *Kandil-Elsayed*, the Court held that it, instead, is an inquiry relevant to the breach element of a plaintiff's premises liability claim. *Id.* at 60. Thus, "whether it is 'reasonable to expect that an average person with average intelligence would have discovered [the dangerous condition] upon casual inspection,' . . . is relevant to the defendant's breach and the plaintiff's comparative fault." *Id.* at 69 (quoting *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94-95 (Mich. 2012)). The Supreme Court reasoned, in part, that "shifting the open and obvious danger doctrine to breach will effectuate the very same policy goals ungirding th[e] Court's premises-liability decisions spanning before and after *Lugo [v. Ameritech Corp.*, 629 N.W.2d 384 (Mich. 2001)).[1] *Kandil-Elsayed*, 1 N.W.3d at 70. As the Court reiterated:

> Underlying all these principles and rules is the requirement that both possessors of land and those who come onto it exercise common sense and prudent judgment when confronting hazards on the land. These rules balance a possessor's ability to exercise control over the premises with the invitees' obligation to assume personal responsibility to protect themselves from apparent dangers.

[1] The Court reasoned that the change also finds support in Michigan's shift from contributory to comparative fault because the "open and obvious" doctrine analyzes "the plaintiff's own behavior—a failure to see a danger, appreciate a danger, or avoid a danger." *Kandil-Elsayed*, 1 N.W.3d at 69.

*Id*. at 70 (quoting *Hoffner*, 821 N.W.2d at 84).

While *Kandil-Elsayed* shifted the focus of the open and obvious inquiry to breach, "it did not otherwise alter the substance of the doctrine." *Wright-Burton v. City of Detroit*, No. 359033, 2024 WL 2096214, at *3 (Mich. Ct. App. May 9, 2024), *appeal denied*, 10 N.W.3d 285 (2024) (emphasis added). It remains an objective standard which "looks only to the objective nature of the condition on the premises at issue." *Kandil-Elsayed*, 1 N.W.3d at 63 (quoting *Hoffner*, 821 N.W.2d at 94-95). Moreover, the Michigan Supreme Court made clear that shifting the "open and obvious" inquiry from duty to breach does not mean a jury question is raised in all "open and obvious" cases. *Id.* at 52 n. 2 ("where the evidence presented to a court concerning breach generates no questions of fact, the issue can be decided by the judge as a matter of law").; *id.* at 71 n.28 ("Whether a duty is breached will generally require consideration of various factual questions properly resolved by a jury. However, if there are no genuine issues of material fact remaining, a court may properly grant summary disposition under MCR 2.116(C)(10).").

If a plaintiff proves the four required elements of a premises liability claim, his or her ability to recover may still be limited under the comparative-fault doctrine.

**B. Comparative Fault**

Prior to the Michigan Supreme Court's decision in *Placek v. Sterling Heights*, 275 N.W.2d 511 (1979), the defensive doctrine of contributory negligence was followed in Michigan tort actions. *See Kandil-Elsayed*, 1 N.W.3d at 52-55 (providing the historical background of the State's jurisprudence). Under this doctrine, "where the plaintiff's injury 'resulted from the fault or negligence of himself, or where it has resulted from the fault or negligence of both parties,' the plaintiff was completely barred from recovery." *Id*. at 52-53 (quoting *Williams v. Mich. Cent. R. Co.*, 2 Mich. 259, 265 (1851)). In *Placek*, the Court abolished the doctrine and replaced it with comparative fault. *Id.* at 55.

Under Michigan's comparative-fault regime, the plaintiff's damages generally are reduced based on the percentage of his or her fault. *See id.* at 56 (citation omitted); *see also* Mich. Comp. Laws § 600.2959. However, "if the plaintiff's percentage of fault is greater than the aggregate fault of the other person or persons, whether or not parties to the action, the court [must] reduce economic damages by the percentage of comparative fault . . . and noneconomic damages [may] not be awarded." *Kandil-Elsayed*, 1 N.W.3d. at 58-59 & n.7 (quotation marks and citations omitted); Mich. Comp. Laws § 600.2959. The relative fault of the parties generally is a jury question unless "no reasonable juror could find that the defendant was at greater fault than the plaintiff." *Zajdel v. Exel, Inc.*, No. 23-

1005, 2023 WL 7990347, at *3 (6th Cir. Nov. 17, 2023) (citing *Huggins v. Scripter*, 669 N.W.2d 813, 813 (Mich. 2003)).

**C. Analysis**

As AMC argues, Plaintiffs fail to establish that a dangerous condition in the auditorium caused Mrs. Kreish's fall. There is nothing unusual about a darkened movie theater, the stairway or floor covering in the auditorium where the incident occurred. *See, e.g., Brown v. Highline Inv., LLC*, No. 358460, 2022 WL 4587145, at *2 (Mich. Ct. App. Sept. 29, 2022) (finding that the darkness in a movie theater was not a dangerous condition). AMC's lighting is automated and has been for many years. Yet Plaintiffs offer no evidence to show that it has proven dangerous to anyone.

The theater lightening was at the same level when Plaintiffs arrived as it was when Mrs. Kreish fell, yet Plaintiffs were initially able to safely make their way to their seats as were the other theatre patrons. Plaintiffs do not offer any evidence to show that the level of lighting posed a dangerous condition or that there was something defective about the flooring or carpet tack strips (which appear to have a reflective covering). In short, Plaintiffs fail to show that a condition of the theater posed an unreasonable risk of harm. *See, e.g., Wright-Burton v. City of Detroit*, No. 359033, 2024 WL 2096214, at *3 (Mich. Ct. App. May 9, 2024).

In *Wright-Burton*, the plaintiff sustained a knee injury after falling over an unmarked curb between the street and sidewalk. *Wright-Burton*, 2024 WL 2096214 at *1. Despite clearly identifying the curb as responsible for her fall, the court held that "there is nothing unusual about a curb separating … a street and a sidewalk in front of a business." *Id.* at *3. Because plaintiff had "not identified anything about the curb that would render it dangerous or … indicate [that] it posed an unreasonable risk of harm," she had "generate[d] no questions of fact" concerning the defendants' alleged breach. *Id.* The court noted that, the "[d]efendants' only duty, after all, was to exercise reasonable care to protect [the] plaintiff from an *unreasonable* risk of harm caused by a *dangerous* condition on the land." *Id.* (emphasis in original).

Even if the auditorium presented a dangerous condition, Plaintiffs do not establish that AMC breached its duty to protect Mrs. Kreish from that harm. The lighting level did not change from the time Plaintiffs first entered the auditorium until Mrs. Kreish fell. If a low-light condition is constant, "not subject to unexpected fluctuations or other changes[,]" and readily apparent, the poor lighting itself constitutes an open and obvious condition that invitees are expected to discover and appreciate. *Singerman v. Mun. Serv. Bureau, Inc.*, 565 N.W.2d. 383, 387-88 (holding that there "was nothing to prevent [the] plaintiff from realizing that [a] hockey rink was inadequately lighted" where the inadequate lighting was

consistently inadequate); *see also Davis v. Olympia Ent., Inc.*, No. 332807, 2017 WL 4526779, at *2 (Mich. Ct. App. Oct. 10, 2017) (citing *Singerman*, 565 N.W.2d at 386-88 and *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 188 (Mich. 1995)) ("indicating that "the hazard presented by steps, stairways, and darkness are generally considered open and obvious"); *Amato v. Maggiano's Holding Corp.*, No. 20-cv-12007, 2022 WL 406314, at *6 (E.D. Mich. Feb. 4, 2022) (holding that the plaintiff's premises liability claim failed because the lack of lighting in the defendant's parking lot was open and obvious—in fact the plaintiff confirmed she registered the darkness).

Plaintiffs had the opportunity to view the steps and flooring in the theater when they first took their seats with Mr. Kreish illuminating the way with the flashlight on his mobile phone. Plaintiffs both admittedly remarked on the darkness when they entered. Moreover, this was not their first visit to this AMC theater; they had been there frequently. As the Michigan Court of Appeals stated in *Davis*, "[a]n average person of ordinary intelligence would notice upon casual inspection the layout of the steps at the theater." 2017 WL 4526779, at *2. As the *Davis* court further stated, under these circumstances, Plaintiffs "would be on notice to take reasonable measures to avoid the condition . . .." *Id.*

Plaintiffs undoubtedly had notice, as Mr. Kreish used the flashlight on his mobile phone when they first entered the auditorium and found seating. Despite

having her own mobile phone, Mrs. Kreish did not use its lights to assist here when moving to new seats. Moreover, she was not watching her feet as she proceeded to those seats.

Under these circumstances, Plaintiffs fail to show a breach of AMC's duty to them. Further, there is no genuine dispute of material fact as to whether Mrs. Kreish was more at fault than AMC.

For these reasons, the Court holds that AMC is entitled to summary judgment.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment (ECF No. 13) is **GRANTED**.

Date: November 23, 2026

s/LINDA V. PARKER
U.S. DISTRICT JUDGE